George A. Pierce *versus* Hastings Strickland.
Same *versus* The Central Bank.
Same *versus* Artemas Leonard.

When a demandant recovers judgment in a writ of entry, he is not "entitled to recover, in the same action, damages against the tenant for the rents and profits of the premises," under the provisions of Rev. Stat. c. 145, § 14, unless he has made his claim therefor in his writ.

In a writ of entry, where the demandant is entitled to recover, and claims damages for the rents and profits of the premises, the tenant is allowed to retain, under the provisions of Rev. Stat. c. 145, § 16, only the value of the use of the improvements made by himself, or those under whom he claims.

These were writs of entry.

The demandant in these actions introduced to prove his

title, at the trial, before WHITMAN C. J. the same deeds and bond, which were in the report of the case, *Treat* v. *Strickland & al.* 23 Maine R. 234; and also the will of Waldo Pierce, and a deed of quitclaim from the heirs of said Pierce to himself, which may be referred to.

The tenants introduced the same deeds and papers which they introduced in said case, and the same offers were made, and same points taken, and the same rulings of the Court, as in the above case, and as reported by the presiding Judge, reference to said report being had.

In the present cases, which were instituted after the Revised Statutes went into operation, the demandant claimed to recover rent or damages against the tenants for the rents and profits of the premises according to the provision in the statute. This claim was resisted by the tenants. In order to settle the amount and to present the question of mesne profits to the whole Court, it was agreed to refer certain questions to Samuel Wells, Esq. by an agreement signed by the parties.

The demandant reserves the right to move to amend, by declaring specially for said mesne profits, if the Court should be of opinion that such an amendment is necessary to entitle demandant to said profits.

The demandant proved by Samuel Smith, that on Nov. 8, 1836, the said E. & S. Smith gave to said Treat & Pierce an agreement of which the following is a copy: —

"Bangor, Nov. 8, 1836.

"We hereby agree with Waldo Pierce and Robert Treat, that we will not call for or demand any paper or bonds signed by them, now in the hands of a third person, until we pay two notes of $1250 each, dated March 12, 1835, and payable to them. "E. & S. Smith.

"Witness, D. M. Howard."

The erections on the premises were made by said Smiths, in 1833, 1834 and 1835; and this fact may be considered as proved in deciding upon the questions in reference to rents and mesne profits. The buildings which were upon the pre-

mises in 1832, were removed by said Smiths, when the present ones were erected.

The demandant offered to prove that the deeds of quitclaim from Samuel Smith to John Fiske, and from same to Stricklands and Leonard were without consideration, and that defendants never in fact purchased or paid for the land or buildings claimed by plaintiff. This evidence was not received by the Court.

If upon the whole case, the demandant was entitled to judgment in his favor, the tenants were to be defaulted, and judgment thereon in each case; and such judgment as to damages for mesne profits and rents as the Court, upon the case and the report of the commissioner, may determine he is entitled to in each case; otherwise the cases may stand for trial.

The following is the agreement to refer, to which, reference was made in the report of the trial, and in the report of the referee.

" The parties agree, that Samuel Wells, Esq. of Hallowell, shall ascertain and report the net rents and profits of an undivided half of the wharf or gore lot declared for, and one undivided fourth part of the 23 feet strip, so called, declared for, on the following principles.

" 1st. As the same would have been if the land had remained with such erections as were thereon at the time of conveyance from Smith to Treat & Pierce, in 1832.

" 2d. What the ground rent only of said demanded premises, without any buildings, would be or would have been.

" 3d. The rents and profits of said demanded lots and premises with the buildings and improvements thereon, as the same were, when said tenants respectively entered and have been since. And said commissioner is to ascertain and report, what part and portion of said rents and profits, he allows for the portion of land on said 23 feet strip, which lies below the line of highwater mark on said strip, and within lines at right angles on the flats from the base line of said highwater mark.

" Also report said rents and profits on the supposition that the lines of said twenty-three feet strip are continued on the flats in the same direction as the side lines of the upland.

" The calculation in all cases to be made, from the time the tenants entered, up to next term of this Court, said report to to be taken by the Court, as facts ascertained and settled, so far as the amount of rent is concerned ; and judgment to be made thereon according to the opinion of the Court.

" The said commissioner not to report any specific line of highwater or to determine the same so as to affect the rights or title of the parties on that point, except as the questions of rents and profits are concerned.

" And the parties further agree, that if the Court shall con- sider the plaintiff by his deeds and the will of Waldo Pierce, and other deeds, papers and evidence in the case, all the evi- dence on both sides being considered, entitled to recover pos- session of said 23 feet strip, with side lines extended on the flats in same direction as the side lines of the upland, and should be of opinion that the plaintiff can legally be permitted to amend his declaration, and ought to have license so to do, so, as specifically to embrace the flats within said side lines continued as aforesaid, then said amendment is to be made and judgment on default and for rents and profits of said pre- mises as the opinion of the Court may be.

" If such amendment is not allowed or asked for, then the Court may render such judgment upon default and for such amount for rents and profits as they shall decide the plaintiff to be entitled to.

" The commissioner to report what proportion each defend- ant is liable for, of the rents and profits."

This agreement was signed by the parties.

" Report of Samuel Wells, referee in the actions George A. Pierce against Artemas Leonard, the same against the Central Bank, and the same against Hastings Strickland & al. said actions now pending in the Supreme Judicial Court in the county of Penobscot.

" The referee having duly notified the several parties, met

them at Bangor in said county on the twenty-second day of May, 1844, and having heard their several pleas, proofs and allegations, and maturely considered the same, does award and determine, and this is his final award in the premises.

" That he does not find, that said Leonard has received any portion of the rents and profits demanded by said Pierce in said action, and it was agreed by the parties, that the referee should thus report in relation to the action against said Leonard.

" And said referee further reports, that upon the first " principle," upon which he is to ascertain the " net rents and profits," as provided in the agreement of the parties, that said Pierce shall recover against the Central Bank for said rents and profits, estimated from the first day of January, 1839, to the first day of July, 1844, the sum of eight hundred and twenty-four dollars and seventy-one cents, and that the said Pierce shall recover against said Strickland & al. the further sum of five hundred and forty-six dollars and fifteen cents.

" And the said referee does further award and determine that upon the second " principle" mentioned in said agreement, the said Pierce recover against the Central Bank the sum of three hundred and ninety-three dollars; and that he recover against said Strickland & al. the further sum of two hundred and sixty dollars.

" It was conceded by the parties, that the city ordinance, passed August 29th, 1842, prohibited the erection of wooden buildings after that period.

" And the referee does further award and determine, that upon the third " principle" mentioned in said agreement, the said Pierce recover against the Central Bank the sum of fourteen hundred and fifty-one dollars and thirty cents, and that he recover against said Strickland & al. the further sum of nine hundred and seventy-eight dollars and ninety cents.

" In the foregoing estimate, the calculation is based upon the assumption, that the lines of the " twenty-three feet strip" are continued on the flats in the same direction as the side lines of the upland; the other mode of calculation by deflecting lines having been waived by the parties. But if the Court shall be

of opinion, that said Pierce is not entitled to recover for rents and profits on said strip below the line of high water mark, included in said estimate, then the referee does award and determine, that there should be deducted from the sum, awarded as aforesaid to said Pierce against the Central Bank, one hundred and thirteen dollars and six cents; and that there should be deducted from the sum, awarded as aforesaid to said Pierce against said Strickland & al., one hundred dollars and twenty-nine cents.

"The preceding calculations are all based upon the time admitted by the parties to be correct, it being from the first day of January, 1839, to the first day of July, 1844.

"June 15th, 1844.                    "Samuel Wells, Referee."

The case was argued by

*A. G. Jewett* and *T. McGaw*, for the tenants; — and by *J. Appleton* and *Kelly*, for the demandant.

To show, that the tenant in possession may set off against the claim for rent, the value of the ameliorations of the estate, made thereon by the tenant, *McGaw* cited 8 Wheat. 75, 80; 5 Coke, 3; Wash. Cir. Rep. 165; 2 Johns. Cas. 438; Stearns on Real Actions, 374.

*Appleton* and *Kelly* cited 12 Mass. R. 314; 9 Greenl. 62; Stearns on Real Actions, 404; 2 Pick. 505.

The opinion of the Court, SHEPLEY J. dissenting therefrom, so far as it respected the damages, was drawn up by

TENNEY J. — The evidence in these cases being the same, which was adduced in that of *Treat* v. *Strickland & al.* 23 Maine R. 234, the demandant is entitled to judgment for possession, upon the principles of that case; he seeks also to recover damages against the tenants for the rents and profits of the premises, from the time of their entry, under the Revised Statutes, c. 145, § 14. The tenants admit the right of the demandant to damages for rents under a proper declaration, but deny their liability for such as were received for the erections made upon the land by E. & S. Smith, after the con-

veyance to Robert Treat and the father of the demandant, by deed of Dec. 18, 1832. The claim for rents and profits is not set out in the declarations of the writs; it has been settled by this Court, in a case not yet reported, that it should be done; but as the demandant has the right reserved to him in the agreement of the parties, to move for the amendment, the writs may be amended in this particular.

The 15th section of the chapter referred to, provides that the tenant shall be liable for the clear annual value of the premises for the time during which he was in possession thereof, deducting all lawful taxes and assessments on the premises, that shall have been paid by the tenant, and all the necessary and ordinary expenses of cultivating the land or collecting the rents, profits or income of the premises; and by the 16th section, in the estimation, the value of the use by the tenant of any improvements made by himself or those under whom he claims, shall not be computed or allowed to the demandant. The section last referred to, may apply to cases where the occupation of the tenant has been such, as not to entitle him to the benefit of the 23d section of the same chapter, and he has made improvements, the use of which have been valuable; of this, however, we give no opinion; but he is allowed to retain only the value of the use of improvements, *made by himself or those under whom he claims the land.* A person having made improvements upon another's land, without consent of the owner, or being in possession under one who made them, without such consent, does not become entitled to the value of the improvements themselves, unless he sustains to the proprietor, the relation, which brings him within the provision of the 23d section; if the tenant, having the right secured by that provision, abandons the possession, and the lawful owner takes it, the tenant relinquishes his rights with his possession, and no one can afterwards avail himself of the improvements previously made, against the owner, and on no principle, can improvements made without the consent of the owner, where the tenant does not claim to hold the land by virtue of the buildings and improvements, be a subject of purchase after the one who

made them has gone out of possession, having no interest whatever in the land.

The case finds, that the erections on the land at the time that Samuel Smith conveyed to Treat and the demandant's ancestor, in 1832, were removed, and new and valuable erections were made in the years 1833, 1834 and 1835, by Edward Smith and Samuel Smith. There is no suggestion that any of the erections, for which rents are claimed, were made by the tenants; and upon an examination of the deeds introduced in the case, we are satisfied they were not made by any person or persons, under whom they claim.

The demandant has the title in the premises, which his father derived by the deed to himself and Robert Treat from Samuel Smith. This deed was of the whole of the wharf or gore lot and an undivided half of the twenty-three feet strip, one undivided half of each portion conveyed, being the premises claimed in these actions. The grantees at the time of the conveyance, executed a bond to Edward Smith and Samuel Smith, to convey to them the same land on the fulfilment of certain conditions; the conditions were not fulfilled and the obligors were released from their obligation therein contained. The deed to Treat and Pierce, and the bond from them did not constitute a mortgage, and the former gave to the grantees an absolute and indefeasible title.

The tenants derive their title to the twenty-three feet strip under the levies of two executions in favor of Amos M. Roberts against Samuel Smith & al. one made Dec. 23, 1836, and the other Sept. 29, 1837; the former, of two undivided sixth parts, and the latter, of one undivided sixth part; the returns of the extent so made, recognize the existence and validity of the deed from Smith to Treat and Pierce. Roberts conveyed to the Central Bank all his interest arising from these levies, by deed of Dec. 27, 1838, referring to the executions and the returns thereon for a description. The tenants also introduced a deed from S. Smith to John Fiske, releasing one undivided sixth part of the strip, dated Sept. 29, 1837; also a deed from S. Smith to John Fiske, dated Dec. 4, 1837, releasing the

right of redeeming the "remaining two sixth" parts, from
Treat and Pierce, of the strip, which is described to be twenty
feet wide, and also the right of redeeming the other parcel de-
scribed in the same deed, which is the wharf or gore lot, that
is demanded in this action, referring to the deed, to Treat &
Pierce in terms; they also adduce a deed from Fiske to Arte-
mas Leonard, dated November 7, 1839, releasing all his inter-
est to one sixth and to two sixth parts of the strip and to the
whole of the wharf or gore lot, and a deed from S. Smith to
Leonard, S. P. Strickland and H. Strickland, dated July 30,
1840, releasing in certain proportions to each his right in a
parcel of land, which includes that claimed in these suits; and
also deeds of the Central Bank of a part of their interest to
S. P. Strickland and H. Strickland.

After S. Smith's deed of Dec. 18, 1832, he was the owner
of one undivided half of the strip, but had no remaining inter-
est in the wharf or gore lot; his title to the strip was covered
by the levies of Roberts, and the creditor's title passed to the
tenants, the debtor not having redeemed the land at any time.
Till the time when Roberts conveyed, after his levies, he was
the owner of one undivided half of the strip, and Treat &
Pierce of the other; neither Smith, or any other, had the least
interest therein; the possession was according to the title; and
if Edward or Samuel Smith or both were upon the premises, it
was in submission to the rights of Treat & Pierce. The deed
of Smith to Fiske, dated Dec. 29, 1837, if of the sixth part
that day levied upon by Roberts, ceased to be operative after
one year; if of the grantor's right in that proportion of
the undivided half in Treat & Pierce, it was equally inopera-
tive, and the subsequent deed from Smith to Fiske of two
sixth parts purports to convey only the right of redeeming of
Pierce and Treat, which could convey nothing, as the latter
had an absolute title. When the two last named deeds were
executed, the grantor therein had ceased to have the least
title to any interest, which he could transfer, excepting the
right of redemption from Roberts' levy of one sixth part, and
neither he or his grantee availed themselves of that right; the

lawful owners being in possession, Fiske obtained none by these deeds; and when he gave his deed to Artemas Leonard, the time of redeeming the one sixth of the strip from Roberts had expired, and he had by his other deed only the right to redeem from those having then an absolute title, and nothing could pass to the person named as grantee. The deed of Smith, dated July 30, 1840, was equally invalid; he had neither title or possession, and the erections made by him were not his property and could not be transferred to the tenants.

The referee agreed upon by the parties, was authorized " to ascertain and report the net rents and profits of one undivided half of the wharf or gore lot, and one undivided fourth part of the twenty-three feet strip." " The calculation in all cases to be made from the time the tenants entered"—" said report to be taken by the Court as facts ascertained and settled, so far as the amount of rent is concerned" — " and the amount of rents was to be ascertained and reported, upon different hypotheses, and one or the other should be decisive according to the construction, which the Court should give to the statute. The referee reported the amount of net rents upon the proportion claimed by the demandant," of the premises, with the buildings and improvements thereon, as the same were, when the tenants respectively entered, and have been since; and the calculations are stated in the report to be all " based upon the time admitted by the parties to be correct, it being from the first day of January, 1839, to the first day of July, 1844." The agreement of the parties on the question, for what time, the demandant was entitled to recover damages for the rents and profits, is conclusive upon the tenants, and they are not at liberty to contend, that they are not liable from the time of their entry.

A default is to be entered; judgment for possession; and, in the opinion of a majority of the Court, for the sums in damages, reported as above by the referee.